```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

STANLEY WASHINGTON, No. 98-B-1845,
        Petitioner,

        -v-                                    04-CV-6351(MAT)
                                               **ORDER**
ANTHONY ZON, Superintendent of
Wende Correctional Facility,

        Respondent.

## I. Introduction

Petitioner Stanley Washington ("petitioner") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction on August 20, 1998 in Monroe County Court of Murder in the Second Degree (N.Y. Penal Law § 125.25(1)). Following a jury trial before Judge John J. Ark, petitioner was found guilty and sentenced to a term of imprisonment of 25 years to life.

## II. Factual and Procedural History

Petitioner stands convicted of murder for the beating death of an acquaintance, Ms. Donna Wyatt ("Wyatt" or "the victim"). Wyatt's body was found at about 7:00 a.m on August 4, 1996 in a storage yard on Ambrose Street in the City of Rochester. The body was found by an employee of the storage yard, who immediately called police. Her skull had been crushed, and her pants were pulled down to her knees, exposing her buttocks. An empty condom wrapper was lying next to the body. Specks of blood were spattered

on railroad ties that were stacked next to the body. TT. 330, 452, 611.¹

Wyatt was last seen alive approximately five-and-a-half hours earlier with petitioner in his pickup truck. Petitioner was arrested two days later for operating an unregistered motor vehicle. Petitioner's truck was impounded, and he was taken to the police station for questioning. After waiving his Miranda rights, the police questioned him extensively about Wyatt. Petitioner admitted that he was with the victim at about 1:30 a.m. on August 4, but denied killing her. He asserted that he gave Wyatt a ride home, and did not see her again after that. With petitioner's written consent, police searched and inspected his pickup truck. Spots of blood were observed on the exterior and interior of the vehicle, and a knife was found on the floor under the seat. Petitioner was charged with violating the terms and conditions of his parole for possessing a knife and failing to comply with his curfew. The investigation continued while petitioner was being held on the parole detainer.²

After it was determined that the blood from petitioner's vehicle matched the victim's blood, the case was presented to the Monroe County Grand Jury, which, after hearing the evidence, issued

---

¹ Citations to "TT.__" refer to the trial transcript; citations to "HT.__" refer to hearings transcripts; "ST.__" refers to the sentencing transcript.

² Petitioner was on parole for a previous conviction for having assaulted a woman with a hammer in 1978. ST. 3.

2

an indictment charging petitioner with Murder in the Second Degree. During the trial court proceedings, petitioner moved to suppress all evidence obtained by police following the stop of his vehicle on the grounds that the stop was unlawfully pretextual. The trial court denied petitioner's request. HT. dated 6/12/98 at 9; Decision & Order, No. 612-97, dated 5/20/1998.

At trial, the prosecution's forensic expert testified that DNA from the blood found on and inside petitioner's truck was consistent with Wyatt's DNA. According to the witness, one in every 12,700 African-Americans have similar DNA characteristics. TT. 818. Another expert witness testified that the blood splatter on the railroad ties matched the blood splatter on petitioner's truck. TT. 744. A third expert testified that a paint chip found at the crime scene matched the paint on petitioner's truck. TT. 631. 634.

The victim's sister ("Phyllis") and two nieces testified that the night of August 3, 1996, Wyatt left a party with them at approximately 1:00 a.m. TT. 338-39. The four women began walking to Phyllis's home, which was a few miles away. While walking down Clifton Street in Rochester, Wyatt flagged down a pickup truck driven by petitioner, whom she knew. Petitioner agreed to give the women and children a ride home. Phyllis testified that petitioner told her that his name was Stan and that he lived on Lime Street, and he had just gotten out of work for the evening. TT. 341-44.

Upon arriving at Phyllis's house, Phyllis and her two daughters exited the truck. Wyatt remained inside, as she wanted to return to her own home that night. Although Phyllis expressed concern over the victim riding with the petitioner alone, Wyatt returned to the truck and left with petitioner. TT. 346-47.

After hearing the proof and deliberating for less than one day, the jury returned a verdict of guilty of Murder in the Second Degree. On August 20, 1997, the trial court sentenced petitioner to 25 years to life in prison. Petitioner appealed his conviction to the Appellate Division, Fourth Department, which unanimously affirmed his conviction. People v. Washington, 291 A.D.2d 780 (4th Dept.) lv. denied N.Y.2d 682 (2002). Petitioner's application for writ of error *coram nobis* was denied by the Appellate Division on April 30, 2003. Similarly, petitioner's motion for *vacatur* under N.Y. Crim. Proc. ("C.P.L.") § 440.10 was denied by letter by the state court on November 3, 2003. Petitioner then filed this petition for habeas corpus pursuant to 28 U.S.C. § 2254, raising four grounds for relief. For the reasons stated herein, petitioner is not entitled to habeas corpus relief and this petition is dismissed.

**III. Discussion**

    **A. Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must

demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413. The inquiry for a federal habeas court is not whether the state court's application of the governing law was erroneous or incorrect, but rather whether it was "objectively unreasonable." See id. at 408-10; see also Eze v. Senkowski, 321 F.3d 110, 125 (2d Cir.2003). Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be

overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.  Merits of the Petition**

**1.  Fourth Amendment Violations**

In grounds one and two of his habeas petition, petitioner argues that his conviction was obtained by the use of evidence derived from an unconstitutional search and seizure and pursuant to an unlawful arrest.  Pet. ¶ 12(A),(B) (Dkt. #1).

In Stone v. Powell, 428 U.S. 465 (1976), the respondent argued that physical evidence used in his trial was the product of an illegal arrest. The Supreme Court held that federal courts could not, on a state prisoner's petition for a writ of habeas corpus, consider a claim that evidence obtained in violation of the Fourth Amendment should have been excluded at his trial, when the prisoner has had an opportunity for full and fair litigation of that claim in the state courts. Stone, 428 U.S. at 494; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir.1992). Stone requires only that "the state have provided the opportunity to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir.1977). Under this standard, there are only two instances in which a Fourth Amendment claim will be reviewed by a federal habeas court: (1) where the state has provided no corrective procedures at all to redress the alleged

6

Fourth Amendment violations; or (2) where the state has provided a corrective mechanism, but the defendant was unable to use it because of an "unconscionable breakdown in the underlying process." Capellan, 975 F.2d at 70 (citing Gates, 568 F.2d at 840).

Stone clearly controls here and precludes habeas review because the petitioner's claim is rooted in a Fourth Amendment violation. The record indicates that petitioner's Fourth Amendment claims were repeatedly reviewed by the state courts and decided on the merits. The Appellate Division, Fourth Department, ruled that the trial court properly denied petitioner's motion to suppress evidence obtained as a result of the police officer's stop of his truck, because the officer had probable cause to believe the defendant was operating an unregistered vehicle. People v. Washington, 291 A.D.2d 780-81 (4th Dept. 2002). Nowhere in his habeas corpus petition does petitioner allege that he was denied a full and fair opportunity to litigate these issues, or that there was some unconscionable breakdown in the suppression proceedings. Rather, petitioner merely complains that the trial court judge "purposefully ignored the [l]aw to prevent evidence from being suppressed[.]" See Petitioner's ("Pet'r") Mem. at 12. (Dkt. #4). It is well established that "a petitioner's mere disagreement with the outcome of the state courts' rulings 'is not the equivalent of an unconscionable breakdown in the state's corrective process.'" Bradley v. LaClair, 599 F.Supp.2d 395, 410 (W.D.N.Y. 2009) (quoting

Capellan, 975 F.2d at 72). As such, petitioner's opposition to the trial court's decision, without more, does not amount to an "unconscionable breakdown" in the state proceedings.

Petitioner's claims are therefore barred from habeas review pursuant to Stone v. Powell. Grounds one and two of the petition are dismissed.

### 2. Ineffective Assistance of Trial Counsel

In his third ground for habeas relief, petitioner alleges that trial counsel was ineffective for failing to oppose the trial court's reliance upon the grand jury minutes in deciding a suppression motion.[3] See Pet. ¶ 12(C) (Dkt. #1). In his C.P.L. § 440.10 motion, petitioner claimed that his trial counsel was ineffective for failing to "object to the [court not] redrafting the Suppression Hearing Decision[.]" In a decision by letter, the § 440.10 court determined that petitioner's claim was without merit and that "[t]here is not the slightest indication that counsel's alleged failures prejudiced Defendant such that he was deprived of a fair trial." (citations omitted). See Decision and Order, No. 612-97, dated 11/3/2003. This Court finds no reason to disturb the state court's finding.

---

[3] After the pre-trial suppression hearings, the trial court issued a written Decision and Order denying petitioner's motion to suppress certain evidence. The Appellate Division, Fourth Department, held that the trial court erred in considering the grand jury minutes in determining the suppression motion, but concluded that the error was harmless. Washington, 291 A.D.2d at 781.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." <u>Id.</u> To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," <u>Id.</u>, and may not second-guess defense counsel's strategy. <u>Id.</u> at 690.

Here, petitioner's claim of ineffective trial counsel is based on counsel's failure to object to the state court's reliance on the grand jury minutes in determining a suppression motion, because the minutes were never offered at the suppression hearing. <u>See</u> Pet'r App. Br. 18-25. The state appellate court reviewed petitioner's underlying claim and, although it agreed that the grand jury

minutes should not have been considered, nonetheless held that the error was harmless. Washington, 291 A.D.2d at 781 ("Those minutes contain no evidence material to the suppression issues different from or additional to the suppression hearing evidence, and thus there is no reasonable possibility that the error might have contributed to the conviction."). Because *pro se* petitions are afforded liberal construction, see Corcoran v. New York Power Auth., 202 F.3d 530, 536 (2d Cir.1999), the Court presumes that petitioner desired trial counsel to move to *reopen* the suppression hearing based on the improper use of the grand jury minutes. However, there is nothing in the record to suggest that had the hearing been reopened, the evidence obtained through the search of petitioner's person, truck, and home would have been suppressed without consideration of the grand jury minutes. See Lynn v. Bliden, 443 F.3d 238 (2d Cir. 2006) (finding no ineffective assistance of counsel where defense counsel failed to move to reopen suppression hearing). His inability to show that he was prejudiced by his counsel's performance means that he cannot prevail on his claim of ineffective assistance of counsel. The state court, in denying petitioner's § 440.10 motion, did not unreasonably apply Strickland. Accordingly, this claim is dismissed.

### 3. Ground Four: Unconstitutional Jury Selection

Finally, petitioner claims that he is entitled to habeas relief because he was deprived of his right to a fair trial by an impartial jury. See Pet. ¶ 12(D). Specifically, petitioner claims that the trial court allegedly failed to obtain an unequivocal response from a sworn juror who was questioned about his ability to be fair and impartial. To support his claim, petitioner relies on C.P.L. § 270.35.[4]

Petitioner's complaint stems from the following: on the morning of June 30, 1998, a female juror was approached by a man who made vague remarks to her about "mak[ing] the right decision" but did not elaborate. TT. 854. The juror did not know who he was or what party he may have been identified with. TT. 859. The trial court subsequently questioned all fourteen jurors about the morning's events. Petitioner disputes that the answer of juror twelve, Mr. Josephson, was unequivocal, and the court should have conducted a thorough inquiry as to his qualification to serve as a juror. Pet'r Mem. 28-29. The trial transcript reads, in pertinent part:

    The Court:    Mr. Josephson, you're familiar with the situation that occurred with Miss Baily this morning?

---

[4] "In determining pursuant to this section whether a juror is unable to continue serving by reason of illness or other incapacity, or is for any other reason unavailable for continued service, the court shall make a reasonably thorough inquiry concerning such illness, incapacity or unavailability, and shall attempt to ascertain when such juror will be appearing in court." C.P.L. § 270.35(2)(a).

| | | |
|---|---|---|
| Juror: | Yes I am. | |
| The Court: | Has that affected your ability to render a fail and impartial verdict? | |
| Juror: | No, I don't think so. | |
| The Court: | You feel intimidated by this at all? | |
| Juror: | No. | |

TT. 873.

In general, "[j]uror discharge and voir dire proceedings are governed by state law." McCrary v. Artuz, No. CV 95-622, 1995 WL 728423, at *3 (E.D.N.Y. Nov. 28, 1995) (citing C.P.L. § 270.35, 270.15(3)). The Court notes that petitioner cites only to New York State law as the basis for his claim for habeas relief. However, the text of the federal habeas statute makes clear that habeas corpus relief is not available for state law errors that do not rise to the level of federal constitutional violations. 28 U.S.C. § 2254(a); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); Smith v. Phillips, 455 U.S. 209, 211 (1982) (holding that non-constitutional claims are not cognizable in federal habeas proceedings).

It is clear that a violation of a state statute such as New York's rule governing juror discharge is not a claim cognizable on federal habeas review unless the violation implicates federal constitutional concerns. Here, petitioner has unpersuasively argued that the trial court erred in not conducting a searching inquiry as to Mr. Josephson's fitness to serve after the juror gave an equivocal response.[5] Even if the trial court did fail to engage in the proper inquiry of Mr. Josephson's ability to serve, it is still insufficient to give rise to a finding of a constitutional error. See 28 U.S.C. § 2254(a); McCrary v. Artuz, 1995 WL 728423, at *3 (rejecting claim under C.P.L. 270.35 as not cognizable on federal habeas review). This claim is therefore dismissed.

### IV. Conclusion

For the reasons set forth above, the Court finds that the petition for a writ of habeas corpus filed by petitioner is denied. Furthermore, the Court finds that petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir.2000).

---

[5] The New York State Court of Appeals has explicitly held that the use of the word "think" does not automatically render a juror's statement equivocal. People v. Chambers, 97 N.Y.2d 417 (2002).

Therefore, the Court finds that no certificate of appealability should issue with respect to any of petitioner's claims.

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated: September 14, 2009
Rochester, New York